585 So.2d 580 (1991)
Declan Charles TRAVERS-WAKEFORD, Husband of/and Frances Margaret Travers-Wakeford, both Individually and on Behalf of their Minor Child, Ryan Christopher Travers-Wakeford,
v.
Jerry J. ST. PIERRE, M.D. and Southern Baptist Hospitals, Inc.
No. 90-CA-1925.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
Rehearing Denied October 16, 1991.
R. Ray Orrill, Jr., Orrill, Shearman & Cordell, New Orleans, for plaintiffs/appellants.
Edward J. Rice, Jr., Rodi W. Culotta, Adams and Reese, New Orleans, for defendants/appellees.
Before GARRISON, WILLIAMS and ARMSTRONG, JJ.
GARRISON, Judge.
Plaintiffs, Declan Charles Travers-Wakeford, Husband of/and Frances Margaret Travers-Wakeford, both individually and on behalf of their minor child, Ryan Christopher Travers-Wakeford, filed a request received by the Louisiana Insurance Commissioner on February 18, 1988 for a medical review panel to hear claims of alleged medical malpractice committed by Dr. Jerry St. Pierre and Southern Baptist Hospitals, Inc. Plaintiffs subsequently filed a petition for damages against these two defendants in Civil District Court for Orleans Parish on April 8, 1988.
On August 28, 1981, Frances Travers-Wakeford was admitted to Southern Baptist Hospital in New Orleans under the care of her obstetrician, Dr. Jerry St. Pierre, for delivery of a child. After the child was *581 delivered, it was discovered for the first time that a second fetus was present. Although the first child was delivered vaginally, it was decided that a caesarean section needed to be performed for delivery of the second child. Approximately fifteen minutes later, the delivery of the second child proceeded without complications. Because Dr. St. Pierre found that both infants did not appear to have any difficulties and did not require any breathing support, he and Dr. Kent Treadway, a consulting pediatrician, informed Mrs. Travers-Wakeford that both infants were healthy. The babies were transferred to the Intermediate Care Unit of the hospital for several days because of low birth weight and both mother and children were discharged from the hospital five days after the delivery of the babies.
On February 27, 1987, Ryan Travers-Wakeford, the second child born to Frances and Declan Travers-Wakeford on August 28, 1981, was evaluated by a pediatric neurologist at the recommendation of his treating pediatrician because of developmental problems. According to plaintiffs, this pediatric neurologist attributed Ryan's developmental problems to brain damage caused by trauma and/or lack of oxygen at birth. In plaintiffs' suit against defendants, they allege that Dr. St. Pierre misinformed them as to the possibility of adverse effects to Ryan because of his delayed birth and misled them and concealed from them the fact that because of the complications of a delayed birth, Ryan could later exhibit effects of encephalopathy, a disease of the brain.
On September 1, 1988, Dr. St. Pierre filed an exception of prescription against plaintiffs arguing that because plaintiffs' request for a medical review panel and petition for damages were both filed more than three years after the date of his alleged negligence, their claims are prescribed under LSA-R.S. 9:5628, the statute establishing prescriptive periods for medical malpractice claims. The trial judge overruled Dr. St. Pierre's exception but granted his counsel leave of court to refile the exception when proper evidence became available. Counsel for Dr. St. Pierre reargued the exception of prescription on June 6, 1990 and included depositions of Frances Travers-Wakeford, Dr. St. Pierre and Dr. Treadway. On August 8, 1990, the trial judge maintained the exception of prescription and dismissed plaintiffs' claims against Dr. St. Pierre. From that judgment, plaintiffs appeal.
LSA-R.S. 9:5628 requires that medical malpractice actions be brought within one year from the date of the injury or within one year of the discovery of the act, omission or neglect which caused the injury. That statute further provides that "in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect."
Because appellants' initial legal action in this case was taken on February 18, 1988, more than three years after the alleged negligent acts of the appellee, appellants' lawsuit has clearly prescribed on its face. However, appellants argue that the doctrine of contra non valentem is applicable in this case and operates to stop the running of prescription.
In Corsey v. State Department of Corrections, 375 So.2d 1319 (La.1979), the Louisiana Supreme Court set forth four categories of situations in which this doctrine can operate to stop the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance or acting on the plaintiffs' action; (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
In Chaney v. State through Department of Health and Human Resources, 432 So.2d 256 (La.1983), the Louisiana Supreme Court held that LSA-R.S. 9:5628 "legislatively overruled the fourth exception of the judicially created doctrine of *582 contra non valentem as it applies to actions for medical malpractice filed more than three years from the date of the act, omission or neglect." Appellants in this case argue that the third category of contra non valentem applies in this situation and operates to stop the running of prescription because they allege that appellee effectually prevented them from availing themselves of their cause of action by misrepresenting to them the true status of Ryan's condition. Specifically, they argue that even though there were increased risks associated with Ryan's delivery and possible later adverse effects resulting therefrom, Dr. St. Pierre failed to inform appellants of these risks and possible future problems and went a step further in assuring the appellants of the healthy condition of the babies. In doing so, according to appellants, appellee concealed information regarding Ryan's actual condition and effectually prevented them from pursuing their cause of action against him.
In appellants' briefs, they detail instances of mistakes allegedly made by Dr. St. Pierre in the delivery of the Travers-Wakeford twins. However, Dr. St. Pierre's alleged negligence in this case is irrelevant for purposes of this appeal. The only issue to be determined is whether or not Dr. St. Pierre committed some act which effectually prevented the appellants from pursuing their cause of action against him.
Appellants claim that Dr. St. Pierre's assurances that both babies were healthy amounted to a misrepresentation of Ryan's actual condition because he allegedly knew of the possibility of brain damage due to lack of oxygen at birth showing its effects later in Ryan's life because of his low Apgar respiration score immediately following birth. Apgar scores are defined in Blakiston's Gould Medical Dictionary (4th Ed. 1979) as the quantitative estimate of the condition of an infant one to five minutes after birth, derived by assigning points to the quality of heart rate, respiratory effort, color, muscle tone, and reflexes, expressed as the sum of these points, the maximum or best score being ten.
Dr. Treadway stated in his deposition that although Ryan's Apgar respiration score was low, his overall Apgar score was normal. Furthermore, both Dr. St. Pierre and Dr. Treadway stated that the low Apgar respiration score does not establish that there was any obvious problem in light of the facts that Ryan was breathing spontaneously and that there was no other indication that Ryan was in respiratory distress at or following birth.
Dr. St. Pierre stated in his deposition that because Mrs. Travers-Wakeford had an uneventful pregnancy, because Ryan did not show signs of distress during delivery or following his birth and because there was no abnormality recorded in the hospital records, he had no reason to believe that Ryan would suffer any problems associated with his delayed birth. Dr. Treadway stated that he saw no indication of neurological damage to Ryan Travers-Wakeford while the baby was in the hospital and knew of no reason why Dr. St. Pierre should have believed that this baby had suffered any neurological injury. Most significantly, Mrs. Travers-Wakeford's deposition included the following exchange:
"Q. Did anyone mislead you, to the best of your knowledge, with regard to or make a statement that was incorrect to you during the course of that hospitalization as to your son Ryan's physical condition as they knew it?
A. Not as they knew it, no.
Q. Do you have any reason to believe that either Dr. St. Pierre or Dr. Treadway knew at the time of that hospitalization that your son Ryan would have any difficulty?
A. I don't know, sir.
Q. You don't have any specific knowledge that they had any information
A. No, sir.
Q. such as that; is that correct?
A. No, that's correct.
(Deposition of Mrs. Travers-Wakeford, p. 35)
The record in this case, including the deposition testimony of Dr. St. Pierre, Dr. Treadway and Mrs. Travers-Wakeford, does not show any evidence that Dr. St. *583 Pierre concealed information or misled the appellants about their son Ryan's condition so as to effectually prevent them from availing themselves of their cause of action. Therefore, the doctrine of contra non valentem is not applicable in this case and cannot operate to stop the running of prescription.
Appellants also argue that the trial judge abused his discretion by apparently determining the credibility of a witness without the benefit of live testimony. In this case, there was no need for a credibility determination by the trial judge because appellants have not offered any evidence to substantiate their claim that Dr. St. Pierre concealed information or misrepresented facts to them regarding their son's condition. Appellants' arguments about Dr. St. Pierre's alleged negligence in this case are irrelevant to the issue of whether or not he misled appellants so as to effectually prevent them from asserting their cause of action. This assignment of error is without merit.
Finally, appellants argue that LSA-R.S. 9:5628 is unconstitutional as being violative of equal protection and due process. As the appellee correctly states in his brief, the constitutionality of a statute must first be questioned in the trial court, not the appellate court. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984); writ denied at 542 So.2d 1383 (La.1989) and at 543 So.2d 2 (La.1989). Furthermore, the plea of unconstitutionality must be specially pleaded to be considered and the Attorney General must be served and is an indispensable party when the constitutionality of a statute is at issue. Lemire, supra. Accordingly, this court will not consider the constitutionality of LSA-R.S. 9:5628 at this time.
Therefore, for the reasons stated above, the trial court judgment maintaining appellee's exception of prescription and dismissing appellants' claim against Dr. St. Pierre is affirmed.
AFFIRMED.