658 So.2d 33 (1995)
Tammi FACIO
v.
Dr. Gary GLAVIANO.
No. 95-CA-35.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 1995.
Darryl J. Carimi, Ivan David Warner, Metairie, for plaintiff-appellant.
Philip J. Borne, New Orleans, for defendant-appellee.
Before KLIEBERT, C.J., and GAUDIN and DUFRESNE, JJ.
KLIEBERT, Chief Judge.
Plaintiff, Tammy Facio, appeals the denial of her claim for worker's compensation benefits for carpal tunnel syndrome which she alleged to be an occupational disease caused by flexing her wrists during the performance *34 of her job duties for defendant, Gary Glaviano, D.D.S. For the reasons which follow, we affirm.
Ms. Facio worked as a dental assistant for Dr. Glaviano from May 6, 1992 until October 9, 1992. She stopped working due to endometriosis which caused her severe abdominal pains. Thereafter, she developed pain in her hands, particularly her right hand, and was told she suffered with carpal tunnel syndrome. On April 1, 1993, she filed this worker's compensation claim against Dr. Glaviano alleging her disability was the result of a work related injury.
The administrative law judge rejected her claim, finding numerous discrepancies as to when the complaints in her hands began. He also noted that Ms. Facio saw Dr. Schultic, who implanted a Norplant birth control device into her arm, on August 4, 1992, September 14, 1992, September 16, 1992, and October 6, 1992. She never mentioned to him that she had pain in her wrists or hands, nor do the Charity Hospital records introduced into the proceeding indicate she suffered any pain in her wrists prior to terminating her employment with Dr. Glaviano. On appeal, she contends the administrative law judge erred in finding the evidence was insufficient to support a judgment that her disabling injury was work related. The appellant argues that instead of rendering a decision based on the evidence submitted, the law judge should have ordered that nerve conduction studies, as recommended by the orthopedists who examined her, be performed.
It is well settled that the standard of review in worker's compensation cases is the manifest errorclearly wrong standard as set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989). see Alexander v. Pellerin Marble and Granite, 630 So.2d 706 (La.1994). Thus, we must review the entire record evidence and determine whether there is sufficient evidence to support the administrative law judge's decision.
Because Ms. Facio worked for Dr. Glaviano less than twelve months, her burden of proof is set forth in La.R.S. art. 23:1031.1.
Specifically, La.R.S. art. 23:1031.1 provides in pertinent part:
Occupational disease
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B.... Occupational disease shall include injuries due to work-related carpal tunnel syndrome....
* * * * * *
D. Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence.
Ms. Facio began working for Dr. Glaviano on May 6, 1992. She testified that her duties included suctioning the patient's mouth, holding the patient's tongue, getting things ready for procedures, mixing chemicals and cements, and cleaning rooms and instruments with disinfectants. Dr. Glaviano's deposition was submitted in lieu of his testimony at trial. His description of Ms. Facio's duties was essentially the same.
Ms. Facio testified that in the course of her employment with Dr. Glaviano she held her wrists in a flexed position for about five hours per day when she was suctioning or holding the tongue down. In his deposition, Dr. Glaviano testified that in a normal eight-hour workday, Ms. Facio would spend no more than half an hour total suctioning patients. *35 He also testified that she was not required to perform this duty for any more than five or ten minutes at any given time.
Ms. Facio further testified that during the second month of her employment with Dr. Glaviano her right hand started to go numb when she would hold down the tongue for a long time. She stated that she would then switch to her left hand and then her left hand would go numb. About five or ten minutes into a procedure, her hand would go numb and she would switch hands and shake her hands. She stated that she told this to Dr. Glaviano and that this condition progressively got worse in the right hand. Ms. Facio denied experiencing any type of trauma to her wrists at any time.
Dr. Glaviano testified that he never observed Ms. Facio shaking her hands or complaining of numbness in her hands while she was working for him. Dr. Glaviano did testify that within the second week that Ms. Facio was employed with him, she had a Norplant contraceptive device implanted into her right arm. He stated that she had this performed one morning and when she came to work that afternoon, she was in so much pain, he told her to go home. Her arm was stiff for two or three days after that. Dr. Glaviano testified that this was the only problem he could recall Ms. Facio ever having with an arm.
Both Ms. Facio and Dr. Glaviano testified that the reason Ms. Facio left Dr. Glaviano's employment was because of her endometriosis which caused severe abdominal pain, resulting in her having to miss a lot of work.
The last day Ms. Facio worked for Dr. Glaviano was October 9, 1992. On October 29, 1992, she went to Charity Hospital complaining of "pains in right arm, right hand and wrist. Painful and swollen × 3 weeks and getting worse." The medical records from this visit were introduced into evidence. The physician who examined her thought she might be suffering from carpal tunnel syndrome. She was referred to the Orthopedic Clinic.
Ms. Facio then sought treatment from a private orthopedist, Dr. Wilmont Ploger. Dr. Ploger's deposition was also introduced into evidence. He testified that Ms. Facio told him that she had pain and numbness in her right wrist which had been present for two months and she had quit her job two months earlier due to this pain and numbness. This pain was localized to her thumb, index and long fingers of her right hand. Dr. Ploger testified that this was suggestive of carpal tunnel syndrome. When questioned as to the cause of this condition Dr. Ploger stated that it could come on without an injury and that holding the hand in a flexed position for a prolonged period of time would precipitate the symptoms. He also testified that it could be brought on by hormonal changes. Dr. Ploger was not aware that Ms. Facio had a Norplant implant nor was he aware of her exact job duties. Ms. Facio was only examined by Dr. Ploger on that one occasion. He recommended that she have a nerve conduction study or MRI. These studies were not performed.
At the request of the appellee, Ms. Facio was examined by another orthopedist, Dr. J. Lee Moss on December 2, 1992. A report prepared by Dr. Moss following this examination was submitted into evidence. Dr. Moss' report states that Ms. Facio developed pain and numbness in her right hand and elbow about three months ago while working as a dental assistant. She complained of numbness in her entire right hand and fingers. She also had these symptoms in her left hand but they were not as severe as they were on the right. Dr. Moss stated that he would have liked to review Dr. Ploger's records before making a diagnosis. He also felt she needed nerve conduction studies. Dr. Moss felt that since her complaints involved her right and left hands, he did not think this was work related.
The plaintiff-appellant moved to Arizona shortly after her visit with Dr. Moss. She had not been examined by any other physicians nor received any other treatment for her complaints at the time of trial. At the time of trial she testified that her right hand continued to bother her, especially while driving. She also stated that she wore a brace on her right hand while driving which was prescribed for her by Dr. Ploger. She testified that her left hand only gave her *36 problems if she was really doing something with it.
In his reasons for judgment, the administrative law judge made reference to the discrepancies created by Ms. Facio as to when the complaints of pain in her hands actually began. The judge also noted that when Ms. Facio visited the physician who implanted the Norplant into her arm, she never mentioned the pain in her wrists or hands and that the medical records from the Charity Hospital visit did not mention pain in her wrists prior to terminating her employment with Dr. Glaviano. Finally, the judge also made reference to Ms. Facio being untruthful on her job application regarding her experience.
It is apparent from our review of the record that Ms. Facio did not carry her burden of proving by an overwhelming preponderance of the evidence that the alleged carpal tunnel syndrome was contracted during her employment with Dr. Glaviano. Therefore, the trial court did not err in denying her worker's compensation benefits.
In her second assignment of error the appellant claims that the statute, La.R.S. art. 23:1031.1, requiring her to prove this occupational disease was contracted during her employment with the appellee by an overwhelming preponderance of the evidence is a violation of equal protection clause of the 14th Amendment and the due process clause of the 5th Amendment of the U.S. Constitution. However, at the trial level, the appellant did not attack the constitutionality of this statute, she merely stated that this burden of proof was "unfair" and "overburdensome."
The issue of whether or not a statute is unconstitutional must be specifically pled at the trial court level before the appellate court can consider this issue. Additionally, the Louisiana Attorney General, as an indispensable party, must be served with a pleading raising the constitutional issue. See La.Code Civ.P. art. 1880; Lemire v. NOPSI, 458 So.2d 1308, 1311 (La.1984); Thompson v. Capital Steel Co., 621 So.2d 1101, 1108 (La. App. 1st Cir.1992); Travers-Wakeford v. St. Pierre, 585 So.2d 580, 583 (La.App. 4th Cir. 1991), writ denied, 592 So.2d 409 (La.1992). The appellant did not do so in this case; accordingly, this issue will not be addressed.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.