669 So.2d 527 (1996)
Jane C. BUCHERT
v.
STATE of Louisiana, Through its DEPARTMENT OF RECREATION AND TOURISM, OFFICE of TOURISM.
No. 95-CA-0924.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1996.
Writ Denied April 8, 1996.
Paul A. Bonin, Bonin Law Firm, New Orleans, for Plaintiff/Appellee.
Richard P. Ieyoub, Attorney General, George P. Vedros, Assistant Attorney General, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, for Appellant/State of Louisiana.
Before CIACCIO, PLOTKIN and MURRAY, JJ.
PLOTKIN, Judge.
The State appeals the trial judge's award of $30,000 to Jane Buchert who was injured when she fell outside the New Orleans Welcome Center. We reverse the judgment.
On April 6, 1992, at approximately 4:45 p.m., Jane Buchert, age 66, and her sister Patricia Ferraro were walking through Jackson Square toward St. Louis Cathedral. The square was crowded and Buchert walked close to the Pontalba building. The sisters conversed as they walked. Neither saw the handicap access ramp on the sidewalk at the entrance to the New Orleans Welcome Center. According to Buchert, she tripped over the ramp and fell to the sidewalk sustaining cuts, scrapes and bruises. Although both had walked through the square many times, neither had ever noticed this access ramp.
The Office of Tourism opened the New Orleans Welcome Center in 1985. Handicap access, mandated by the Americans with Disabilities *528 Act, has been provided by a small ramp since the opening. The ramp extends approximately twelve inches onto the slate sidewalk. The ramp, made from wooden boards and painted brown to match the historic building's woodwork, was provided by the Presbytere, which owns the Pontalba building and which provides identical ramps to other businesses in the building. Employees of the Office of Tourism place the ramp in the doorway when the center opens and remove it when the center closes.
Buchert filed suit against the State on April 5, 1993, under a theory of strict liability. A bench trial was held on December 7, 1994. The State conceded that the ramp was under its control but claimed that it had neither actual nor constructive notice that the ramp was defective as required by La. R.S. 9:2800(B). The trial judge, however, ruled that no notice was required because the ramp was part of a building, which the trial judge considered to be exempted from the notice requirement by La.R.S. 9:2800(A). Therefore, the trial judge held the State liable because Buchert tripped over a ramp under the State's control and fell, sustaining injuries. The trial judge determined that Buchert was not comparatively negligent because the square was crowded and because the brown ramp deceptively blended into the slate sidewalk. The trial judge awarded $30,000 general damages after concluding that expert testimony had not ruled out a reasonable possibility that Buchert's back pain was caused by the fall.
The State appeals, claiming that Buchert failed to meet her burden of proof, that the ramp is not unreasonably dangerous, that Buchert herself was at fault in the accident, and that the verdict is excessive. The State does not appeal the trial judge's ruling regarding notice. Because we find that the trial judge's conclusion that this access ramp presents an unreasonable risk of harm is manifestly erroneous, we reverse the judgment and dismiss the action.
Under Civil Code article 2317, the custodian of a thing is strictly liable for damages caused by a defect of the thing that created an unreasonable risk of harm. Loescher v. Parr, 324 So.2d 441 (La.1975). To prevail under a theory of strict liability, the plaintiff must prove that a thing in the custody of the defendant was defective (i.e. presented an unreasonable risk of harm) and that this defect caused him to sustain damages. Id. The State conceded that it had custody of the access ramp. Buchert's and Ferraro's testimony that the ramp caused the fall and at least some of the injuries was not rebutted. The trial judge found that the ramp presented an unreasonable risk of harm because it was painted to blend in with the sidewalk.
The State can be held liable only for an unreasonable risk of harm arising from the access ramp. The means by which a judge can decide whether a thing presents an unreasonable risk of harm was explained in Entrevia v. Hood, 427 So.2d 1146 (La.1983):
The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code. Since Articles 2317 and 2322 state general precepts and not detailed rules for all concrete cases, it becomes the interpreter's duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility.... Although the judge, unlike the legislator, is constrained by the concrete problem before him and the ambit of his limited authority, he nevertheless must consider the moral, social and economic values as well as the ideal of justice in reaching an intelligent and responsible decision.
. . . .
The judicial process involved in deciding whether a risk is unreasonable under Article 2317 is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, and in deciding the scope of duty or legal cause under the duty/risk analysis. This is not because strict liability under Article 2317 is equivalent to liability for negligence, but because in both delictual areas the judge is called upon to decide questions of social utility that require him to *529 consider the particular case in terms of moral, social and economic considerations, in the same way that the legislator finds the standards or patterns of utility and morals in the life of the community.
Id. at 1149-50 (citations omitted).
That the social, moral, and economic utility of a handicap access ramp is enormous is not disputed. Nor should the potential gravity of harm from a fall by an elderly person who trips over an encroachment on the sidewalk be underestimated. However, the trial judge greatly exaggerated the likelihood of harm from this particular ramp when she concluded that the ramp was deceptively painted so that it would blend into the sidewalk. From the plaintiff's own photographic evidence at trial, it is obvious that the ramp is readily visible against the contrasting sidewalk. Moreover, according to the employees of the Welcome Center, the center's registration book is signed by approximately 186,000 visitors annually. Despite the high volume of visitor traffic in the square, no one has complained of injury from the ramp to the center since it opened in 1985.
Appellee compares Buchert's accident to that in Landry v. State, 495 So.2d 1284 (La. 1986). In Landry, a fisherman fell because of a large hole, which was partially obscured by grass, next to a seawall in a recreational area. Id. at 1286, 1288. The Louisiana Supreme Court found that the hole presented an unreasonable risk of harm to visitors in a recreational area because the public owner could better disperse the cost of liability, the potential for harm was great in such a heavily trafficked area, and the cost of prevention would be slight. Id. at 1288. Unlike the hole in Landry, the access ramp is clearly visible. Moreover, unlike the hole, the access ramp is located in the midst of a historic district, whose fragile character would be harmed by the construction of a brightly colored ramp. Neither is appellant's solution that the ramp be enclosed by large plants adequate; plants might obscure the ramp and themselves become a greater obstacle to pedestrians and handicapped users of the access ramp.
Buchert's accident is also distinguishable from that in Johnson v. New Orleans Department of Streets, 94-1542 (La.App. 4th Cir. 2/23/95), 650 So.2d 1216. In Johnson, a pedestrian fell because of a concealed hole in the sidewalk, which the trial judge described as a "trap." Id. at p. 1, 1217. In contrast with the access ramp, this hole was so obscured by grass as to not even be visible when viewed directly. See id. at p. 2, 1217-18. The center's access ramp cannot be compared to the trap inherent in a concealed hole and the square's historic character adds an important consideration of policy to this case. The New Orleans Welcome Center is located in a historic building in the center of a historic district. The Presbytere, by providing small, brown wooden access ramps, has struck an admirable balance, providing handicap access to this historic building while preserving the district's unique and fragile character.
Accordingly, the judgment of the trial court is reversed and the case against the State dismissed. Because the judgment is reversed, appellant's remaining assignments of error are rendered moot and will not be addressed by this Court. The parties will bear their own costs.
REVERSED AND DISMISSED.
MURRAY, J., concurs in the result.