hWICKER, Judge.
This appeal arises from a worker’s compensation claim filed on behalf of Lawrence Henderson, Jr. (Henderson). Henderson’s widow, Elexia Henderson, sought worker’s compensation from Henderson’s employer, Colonial Sugar Refinery (Colonial), for the heart attack and death of her husband occurring November 3, 1993. The hearing officer rendered judgment in favor of Colonial and dismissed the claim at Mrs. Henderson’s cost. She now appeals. We affirm.
On appeal Mrs. Henderson specifies the following errors:
1. The hearing officer erred in finding that the claimant did not meet the burden of proof set forth in La.R.S. 23:1021(7)(e).
2. La.R.S. 23:1021(7)(e) is unconstitutional and violative of the equal protection clause since it places a more stringent burden of proof on workers with heart related and/or perivascular claimants than other claimants.
3. The hearing officer erred in assessing all costs of these proceedings to plaintiff.
We note at the outset that two of the specifications urged are not properly before this court. Although appellant has specified as error the hearing officer’s taxing of costs to the plaintiff, the losing party, that specification has not been briefed. It is considered abandoned. Uniform Rules — Courts of Appeal Rule 2-12.4; Milton v. Elmwood Care, Inc. 95-442 (La.App. |25th Cir. 10/31/95), 664 So.2d 503, 508; Robertson Roofing & Siding, Inc. v. Dr. and Mrs. Samuel E. Greenberg, 96-107 (La.App. 5th Cir. 5/28/96), — So.2d -. Additionally, appellant raises for the first time on appeal the plea of unconstitutionality. In Fació v. Glaviano, 95-35 (La. App. 5th Cir. 6/28/95), 658 So.2d 33, 36 we did not consider the issue of the constitutionality of a statute which had been raised for the first time on appeal in a worker’s compensation matter.
La.R.S. 23:1021(7)(e) provides:
(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
The hearing officer reviewed the testimony at trial and concluded the claimant had not met the burden of proof required by La.R.S. 23:1021(7)(e). We find no manifest error in that conclusion. Part one of the two-prong requirement has not been met. There is no evidence that Henderson was performing work at the time of his death which was “extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in the occupation.” La. R.S. 23:1021(7)(e). At the time of his death, Henderson was qualifying for a new job. The comparison made of the new job with his former job indicates it was physically similar. Elexia Henderson further testified that her husband disliked the new job but she did not think physical stress was a factor for his dislike. Appellant argues that Henderson’s mental stress caused by a change in jobs should be considered in awarding compensation. She further argues that Dr. Luikart testified that had Henderson been given a shock to the heart within three-to-eight minutes, he would have survived and that Henderson was brain dead by the time they were able to remove him from the 7th floor. She argues that this additional stress contributed to his death. We disagree and have previously followed the clear wording in La. R.S. 23:1021(7)(e) “that the stress or exertion must be physical in nature.” Harge v. MCC Specialty Contractors, Inc., 94-790 (La.App. 5th Cir. 2/15/95), 650 So.2d 425, 428, writ denied, 95-0736 (La.4/21/95), 653 So.2d|3574, writ denied, 95-0611 (La.4/21/95), 653 So.2d 574, writ denied, 95-0736 (La.6/2/95), 654 So .2d 1100.
*875 At trial it was stipulated that Henderson was an employee of Colonial on November 8, 1993, the date of his death and that he was married to Elexia Henderson. The testimony at trial showed that Henderson had been employed by Colonial for 25 years when he suffered a heart attack. He was 58 years of age at the time of his death. On the date of his death he was trying to qualify for a new position with Colonial. Henderson had been treated for hypertension and heart disease since 1988.
Alexia Henderson testified she and Henderson have two adult children. At the time of his death she was retired. When she arrived at the refinery, she waited 45 minutes while attempts were made to move her husband from the seventh floor. Both the stairs and elevator were too narrow to accommodate a stretcher.
Her husband gave her no indication that day or the previous night of illness. He told her he was dissatisfied with the company’s sending him to be qualified for another job. He told her he had to either qualify for the new job or go into the labor pool. He disliked the job because he was not treated well by his supervisor and because his former job was not being deleted. She did not think physical stress was a factor causing him to dislike the new job. She felt it was emotional and mental stress.
She knew her husband had taken blood pressure medication for years but did not know he was taking heart medicine.
Charles R. Galatas, Henderson’s supervisor, testified he was present on the date of the incident. Henderson was qualifying for a job as filter head operator. Colonial combined Henderson’s former job of “angola operator” with the job of “hershul operator” after Henderson’s former job had been terminated by Colonial. Jobs are phased either out when no longer needed, when the work force is reduced, or through the advent of automation. Due to his seniority he had the right to try out for another job by a qualifying period of training. All employees who underwent qualifying went through the same three-day qualifying training in order to begin performing the duties of filter head operator. Henderson had successfully completed the requirements thus far when on his third day he collapsed while hooking a pipe to|4the manifold. Henderson did not have to physically hold these materials. He had performed this task 10 to 15 times over the previous three days. The temperature at the work location was 82 degrees, which was close to the temperature of his former location.
Galatas compared the two jobs. He stated that both jobs required physical exertion and were grueling at times. He stated the only difference as far as labor requirement between the jobs was that Henderson’s former job often required stair climbing while the current one did not.
Anthony Musso, director of public relations and human resources at Colonial, testified he was familiar with the circumstances of the job change. He stated due to technological changes there was a reorganization of the plant. In such a situation employees with seniority have the option of undergoing a trial period of qualifying for the new position or working in the packaging department as a laborer.
Musso testified that he was only familiar with general job requirements at the plant and not with a lot of the details. He stated the two jobs were different in “nature” but did not explain what he meant by “nature.” He further stated that they both required manual labor and the operation of equipment.
Dr. Carl Luikart, a cardiologist, testified he never treated Henderson, but did examine Henderson’s medical records, including the autopsy report. Dr. William P. Newman, III, a pathologist, testified he performed the autopsy. He stated that preexisting blockages led to Henderson’s death. Dr. Luikart stated Henderson “had a cardiac arrest secondary to the fact that he has high grade blockages in his arteries.” One artery was blocked 80% and another was blocked 90%. Dr. Luikart testified that death from 90% blockage more commonly occurs when a person is sleeping or engaged in no physical exertion.
Dr. Luikart explained that when someone has a heart attack and ventricular fibrillation if that person is in a hospital or a place *876 where they can get “immediate” shock they could survive the heart attack and if not they would die in three-to-eight minutes. However, Dr. Luikart was speaking in generalities and was never specifically asked whether this was the case with Henderson. In fact, Dr. Luikart testified “unequivocally” that the predominant cause of death was Henderson’s preexisting heart condition. He did not know whether physical exertion brought this on because he was not present at the time of the incident. Dr. Luikart never |5testified that the failure to administer shock immediately to Henderson caused his death.
Appellant also states in brief that Dr. Lui-kart testified that physical exertion played a role in Henderson’s death. Dr. Luikart stated he was not present at the time of the incident and did not know if physical exertion played a role. He only opined that if Henderson had been doing an extreme amount of work in comparison to that which he was used to doing, then the exertional activity would play a role.
Accordingly, for the reasons stated, the judgment is affirmed at appellant’s cost.
AFFIRMED.