693 So.2d 344 (1997)
Norman WILSON, husband of/and Sandy P. Wilson
v.
CITY OF NEW ORLEANS, et al.
No. 95-CA-2129.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1997.
Rehearing Denied May 30, 1997.
*345 Daniel A. Claitor, New Orleans, for Plaintiffs.
Avis Marie Russell, City Attorney, Greer E. Goff, Assistant City Attorney, New Orleans, for City of New Orleans.
Before BYRNES, JONES and LANDRIEU, JJ.
BYRNES, Judge.
The plaintiffs appeal the dismissal of their action against the City of New Orleans based on a slip and fall claim that Mr. Wilson was injured when he fell on a cement green post installed to close that part of Bourbon Street to vehicular traffic. We affirm.
On Saturday night, October 12, 1994, Norman Wilson, a tourist, walked with his son-inlaw, Barry Nicholas, to have dinner in the French Quarter. After dinner, the two proceeded down a crowded Bourbon Street, listening *346 to music and taking in the sights. They stopped at a bar and listened to a set of music. They began walking again. Sometime after midnight at the corner of Bourbon and Conti Streets, Mr. Wilson testified that he tripped over a bent green post in the street. The post was cast iron filled with cement, and was about 38 inches tall. The plaintiff did not observe the post until after he fell and crushed his left knee on the pavement and sustained abrasions and lacerations to his right leg and knee. Someone came out of one of the clubs and asked if the plaintiff needed an ambulance. The record shows that an ambulance call came in at 2:29 a.m. An ambulance transferred Mr. Wilson to Tulane Medical Center where an orthopedic surgeon recommended surgery. Mr. Wilson returned to Michigan, where surgery was performed on October 24, 1991.
After a bench trial, the trial court found that the post was defective but that there was no evidence to indicate that the City had notice of the defective pole. The trial court dismissed the plaintiffs' claim against the City, and the plaintiffs' appeal followed.
On appeal the plaintiffs claim that the trial court erred in: (1) requiring proof of notice to the City of a defective condition; and (2) failing to find that the plaintiffs provided testimony of city workers which showed that the City had actual or constructive notice of the defect.
The City maintains that the plaintiffs did not provide evidence of which post caused the injury, the plaintiffs did not show that the City had notice of the defect, and the plaintiffs did not establish a causal link between the defendant's act or omission and the plaintiffs' damages by a preponderance of the evidence.
The plaintiffs contend that the notice requirement to a public entity under La. R.S. 9:2800 was unconstitutional at the time of the accident, and consequently, the appellate court must review the case de novo. However, the constitutionality of a statute must first be questioned in trial court, not in appellate court. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308, 1311 (La.1984), Travers-Wakeford v. St. Pierre, 585 So.2d 580 (La.App. 4 Cir.1991), writ denied, 592 So.2d 409 (La.1992). In the present case the record does not show that the plaintiffs raised the constitutional issue before the trial court. Therefore, that issue cannot be considered by this court.
The plaintiffs also argue that the post was defective because it was painted green rather than yellow at the time of the accident, and that the post was also defective because it was bent.
Liability for an accident caused by a road defect may arise under a theory of negligence or strict liability; under either theory the analysis is the same in an action against a government defendant. Campbell v. Louisiana Dept. of Transp. and Development, 94-1052 (La. 1/17/95), 648 So.2d 898. Elements that the plaintiff must prove to recover damages from the government entity include: (1) that the defendant owned or had custody of the thing that caused the damage; (2) that the thing was defective in that it created an unreasonable risk of harm to others; (3) that the defendant had actual or constructive knowledge of the defect or unreasonable risk of harm and failed to take corrective action within a reasonable time, and (4) causation. Faulkner v. State, Dept. of Transp. & Development, 25,857 (La.App. 2 Cir. 10/26/94), 645 So.2d 268, writs denied 94-2901 and 94-2908 (La. 1/27/95), 649 So.2d 390. A municipal authority is deemed to have constructive notice if the defect existed for such a period of time that by exercise of ordinary care and diligence, the municipal authority must have known of its existence, and the municipal authority had a reasonable opportunity to guard the public from injury by remedy of the defect. Dawson v. City of Bogalusa, 95 0824 (La.App. 1 Cir. 12/15/95), 669 So.2d 451.
In deciding whether something presents an unreasonable risk of harm such that a public entity may be held liable based on a defective condition of the roadway, the court must weigh the magnitude and probability of injury against the burden of preventing the injury. Faulkner, supra. A public imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence. Boddie v. State, 27,313 (La. *347 App. 2 Cir. 9/27/95), 661 So.2d 617. In terms of a duty-risk analysis, the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, that the defendant owed a duty to the plaintiff that the defendant breached, and that the risk of harm was within the scope of protection afforded by the duty breached. Rhodes v. State Through Dept. of Transp. and Development, 95-1848, (La.5/21/96), 674 So.2d 239, 242. The unreasonable risk of harm criterion with regard to things is not to be applied mechanically, but rather serves as a guide for judges and jury in evaluating the certain condition and risk that it imposes; the court and/or jury has a duty to balance the claims and interests of the parties, weigh the risks and gravity of the harm, and consider as well the individual and societal rights and obligations. Brown v. Diamond Shamrock, Inc., 95-1172 (La.App. 3 Cir. 3/20/96), 671 So.2d 1049.
In Buchert v. State Through Dept. of Recreation and Tourism, Office of Tourism, 95-0924 (La.App. 4 Cir. 1/31/96), 669 So.2d 527, writ denied 96-0534 (La.4/8/96), 671 So.2d 341, this court found that the handicapped access ramp on the sidewalk outside of the welcome center that was painted to match the building's woodwork did not impose an unreasonable risk of harm; the ramp was readily visible against the contrasting sidewalk, no one else complained of injury from the ramp despite the high volume of visitor traffic in the area, the ramp was in a historic area, and the Presbytere had struck an admirable balance of providing handicapped access to a historic building while preserving the district's unique and fragile character.
In Hebert v. Southwest Louisiana Elec. Membership Corp., 95-405 (La.App. 3 Cir. 12/27/95) 667 So.2d 1148, writs denied by McSpadden v. Southwest Louisiana Elec. Membership Corp., 96-0277 (La.5/17/96), 673 So.2d 607 and 96-0798 (La.5/17/96), 673 So.2d 608, an automobile went off the road and struck a utility pole. The Third Circuit found that although a utility pole, guy wire, and wire anchor could have been placed in a better location, they were not defective. The court stated that:
... The mere existence of safer alternatives does not by itself render the object unreasonably dangerous or an unreasonable risk of harm ... [T]he utility of the thing must be balanced against the likelihood and magnitude of the risk and social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident.
* * * * * *
A duty to relocate a pole "may arise when experience has shown that the location of the pole presents an unreasonable risk of harm to the motoring public. If the nature of the street is such that motorist[s], albeit inattentive or careless, frequently leave the street and hit the pole, the utility company may have a duty to correct the hazard its pole creates if there exists reasonable alternative locations which would minimize the risk of harm." Duplissey v. City of Bastrop, 561 So.2d 796, 798 (La. App. 2 Cir.1990).

Hebert, id. at 1160.
In that case there was no evidence that motorists frequently left the road and struck the pole and wiring system.
In the present case, Jerry Burns, the Labor Supervisor with the City Sanitation Department, testified that the cast iron posts were made by the City and put in place at night from 8:00 p.m. to 6:00 a.m. A set of five posts were placed in the street on each side of intersections with Bourbon, starting with Iberville, (which was the only intersection that had only one set of posts), and ending with St. Ann. The posts originally had been painted dark green but were painted a lighter green at the time that Norman Wilson fell. Mr. Burns related that sometimes delivery trucks or cars would strike the posts, and they would be bent into the street. He said that they could be turned around by pedestrians. He was not aware of any complaints of anyone walking into the posts. He had only heard of people tripping on posts that had been placed on the ground. He knew that sometimes delivery truck drivers removed the posts, parked, and then did not replace the posts into the holes before leaving. Mr. Burns also knew of one *348 incident where someone stepped into one of the holes. No complaints were filed with the Department that someone walked into a post.
Chris Baquet, an employee for the City Sanitation Department, testified that he was trained to replace poles the same day when they got bent; however, in five years he had not seen any poles that were bent all the way. He related that slanted posts that were bent at the top could remain in the holes. If they were bent at the bottom, they would not stay in the holes.
Plaintiff Norman Wilson testified that he fell forward, tripped, impacted his left knee on the black top, looked back, and instantly realized that he tripped on a upright slanted post which was in a socket or hole. He was looking ahead, walking. He did not remember anybody bumping into him on the street. Out of the set of five posts across the intersection, he knew at the time but was not exactly sure later which post caused him to fall.
When asked, "What were you looking at before you fell?" Norman Wilson stated: "Just, you know, looking ahead, you know, walking. If I, you know, it's kind of a hard place to walk and look down because of so many people, you have to watch that you don't run into people." The plaintiff walked from the restaurant, Felix's, on Iberville, and turned down Bourbon toward Esplanade. He would have walked past the intersection on Bienville before reaching the intersection of Bourbon and Conti. Therefore, he would have already passed two sets of posts in the street on Bourbon and Bienville. Bourbon Street was well lit. When the plaintiff was looking out for people, who would have on clothing of different colors, including dark tones, if he were exercising ordinary care, he also would have been able to see an upright post with the height of 38 inches, even if it were bent and painted green.
In the present case the plaintiff did not show that he tripped and fell on a particular post. In Kammerer v. Sewerage and Water Bd. of New Orleans, 93-1232 (La.App. 4 Cir. 3/15/94), 633 So.2d 1357, writ denied 94-0948 (La.7/1/94), 639 So.2d 1163, the Sewerage and Water Board was not liable for an injury sustained by a motorist who collided with a manhole cover absent any evidence showing that the Board had notice, actual or constructive, of a defect with the particular manhole in question.
The plaintiff in the present case did not show that the City had actual notice of the bent post. Jerry Burns, the City Labor Supervisor, testified that no complaints were filed with the Department. A municipal authority is deemed to have constructive notice if the defect existed for such a period of time that by exercise of ordinary care and diligence, the City must have known of its existence and had a reasonable opportunity to remedy it. However, the accident occurred after midnight, and constructive notice cannot be assumed where there was a time gap where one of the posts could have been hit by a vehicle but the Sanitation Department's employees had not gone back to pick up the posts and would not have seen the bent post until the next morning. Although the City had notice that the post was green, it would be conjecture to determine whether the City had constructive notice of a bent post. It would be hard to say that the City had constructive notice without a determination of which post was involved in the accident.
The posts were constructed so that they would barricade vehicles from traveling on Bourbon Street, but the row of five posts in the street would enable pedestrians to walk beyond the posts. Although the posts could have been painted yellow as a safer alternative, there was no evidence that pedestrians frequently walked into the posts and were injured. In balancing the interests of the parties and weighing the societal rights and public interest in the use of the posts with the magnitude and probability of injury to individuals, this court cannot find that one of the posts was defective under the totality of circumstances. The posts provided a risk that was apparent and obvious to persons exercising ordinary care and prudence. The plaintiffs did not prove that their risk of harm was within the scope of protection afforded by the breached duty.
The trial court was clearly wrong in finding that the post was defective. We agree *349 with the trial court's finding that the plaintiff failed to show that the City had notice.
Accordingly, we affirm the judgment of the trial court, dismissing the action against the City.
AFFIRMED.
JONES, J., dissents.