# NOT FOR PUBLICATION

## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-666

**MICHAEL J. ROMERO, ET AL.**

**VERSUS**

**CITY OF NEW IBERIA**

**\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## SIXTEENTH JUDICIAL DISTRICT COURT
## PARISH OF IBERIA, DOCKET NO. 116,329
## HONORABLE CHARLES L. PORTER, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Oswald A. Decuir and Shannon J. Gremillion, Judges.

**AFFIRMED.**

James W. Schwing, Sr.
411 Iberia Street
New Iberia, LA  70560
(337) 365-2445
**ATTORNEY FOR PLAINTIFF/APPELLEE**
    Michael J. Romero

Karen Day White
700 North Tenth Street, Suite 440
Baton Rouge, LA  70802
(225) 332-7631
**ATTORNEY FOR DEFENDANT/APPELLANT**
    The City of New Iberia

**COOKS, Judge.**

Defendant, the City of New Iberia, appeals the trial court's judgment finding it liable in damages for a defect in its sewer line which led to flooding of Plaintiffs' property. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

On March 23, 2010, Plaintiffs filed suit alleging property damages from various instances of flooding. The commercial property at issue is located at 131 Main Street in the City of New Iberia. The property is known as La Petite Mall, and was leased at the time of the flooding problems in question to the Academy of Acadiana Nursing School. The property is owned by Michael Romero and his two sons, Corey and Shaun Romero. Johnny Romero, who is Michael's father, and Corey and Shaun's grandfather, stated he purchased the property as a future investment for his son and grandsons. After suit was filed, Johnny Romero was added as a party plaintiff. On August 2, 2011, Michael, Corey and Shaun assigned all of their rights in the litigation to Johnny. Michael, Corey and Shaun were subsequently dismissed upon their voluntary motion on August 11, 2011, leaving Johnny Romero as the only remaining plaintiff.

Mr. Romero alleged that flooding problems began with the property in 2007, and he immediately brought this to the attention of the City of New Iberia Sewerage Department. He also stated he hired a plumber, Calvin Segura, to investigate the sewer lines on his premises. Mr. Segura found no problems with the sewer lines on Mr. Romero's property. Mr. Romero testified the damages sustained in the 2007 flooding incident were relatively minor, and he absorbed the costs.

Mr. Romero testified after the 2007 flooding problems he undertook a major renovation on the property, creating numerous, separate, commercial rental spaces.

He estimated the cost of this renovation was approximately $750,000.00.

In September of 2008, during Hurricane Ike, flooding from an apparent sewerage back flow occurred on Mr. Romero's property. Ginger Barras, the director of the Academy of Acadiana Nursing School (the major tenant of the property), testified flood waters entered the building through toilets and flood drains. She testified on several other occasions, both prior and after, the property flooded due to sewerage back flow.

Mr. Romero testified he again hired Mr. Segura to find the cause of the flooding after the September, 2008 flooding incident. Mr. Segura found no obstruction in the property's sewerage system. The City of New Iberia Sewerage Department was then contacted and attempted to find the property's sewer connection to the City's main sewerage line. They were unable to locate the sewer connection to the main line and could not determine the cause of the flooding problems. The City of New Iberia acknowledged it did not possess any drawings showing the sewerage connections between the main line and private plumbing systems in that area.

Mr. Romero testified the property continued to suffer flooding incidents after heavy rains. All parties confirmed the City attempted on several occasions to determine the cause of the flooding problems. Several tests were performed, including closed circuit camera inspections, water-dye flood testing, smoke testing and visual inspections of the municipal sewerage system.

In March, 2009, a severe rain storm hit the area and there was a subsequent sewerage system back flow which caused substantial damage to the property. Mr. Romero testified the property suffered damages in the amount of $127,611.19. Following this flood, Mr. Romero hired Wayne Labiche, a civil engineer, to attempt to determine the cause of the sewer flood events. Mr. Labiche consulted

2

with Calvin Segura, Rodney Babineaux (another plumber who was hired by Mr. Romero to inspect his sewer line for problems on the recommendation of Vince Palumbo), and property owners/managers from the surrounding area. Mr. Labiche issued a report which concluded the damages to Mr. Romero's property were caused by an overflow of sewerage due to the inability of the City of New Iberia Sewer Department's gravity system to handle normal sewage flow when combined with the increased infiltration demand from heavy rainstorms. He also believed due to the age of the City's pipes in the area, water gets into the sewerage system because of cracks in the lines as well as broken or separated joints.

Mr. Labiche also indicated in his report it was his belief that the City had, in the Spring of 2009, installed a backflow preventer on the sewer line to alleviate the flooding problems. In conducting his interviews with owners and tenants in the area, Mr. Labiche ascertained that the City had excavated two sections of piping in the area of Mr. Romero's property in an attempt to locate Mr. Romero's service line. Mr. Romero was unable to find out exactly what the City did or accomplished with these excavations. However, Mr. Labiche concluded "[s]tatements by the tenants about the difference noticed in the flushing of the toilets and information passed along by Rodney Babineaux support the existence of a backflow preventer. . . when they did their work on Mr. Romero's service line."

Mr. Romero also presented the testimony of other owners or managers of nearby property that experienced similar problems with sewerage back flow. James Perez, who owns an insurance agency located at 105 West Main Street, testified that he suffered several instances of flooding on his property due to sewerage back flow during the last six years. Specifically, he stated on several occasions after heavy rains he experienced back flow from floor drains and toilets overflowing. He stated he contacted the City of New Iberia Sewer Department for

3

help with this problem.

Janet Faulk, the director of the New Iberia Chamber of Commerce located at 111 West Main Street, testified on May 5, 2008, this property suffered from a "continuing problem" resulting from water intrusion. The Chamber installed a new sewer line, which seemed to alleviate the problem. However, in September 2011, she told Mr. Labiche when he interviewed her, that after heavy rains the water level in the toilets rose significantly, although they stopped short of overflowing.

Lastly, Mr. Romero presented testimony and invoices from several repairmen he hired to establish the damages he suffered and costs he expended as a result of the water intrusion on his property. To counter this testimony, the City presented a repair estimate from an adjuster which concluded the costs of repair and remediation of the entire building was approximately one-third of what Mr. Romero claimed.

The City also presented the testimony of Vince Palumbo, the Director of the Waste Water Department for the City of New Iberia. He agreed that the City's sewer pipes in the area of Mr. Romero's property were approximately 100 years old. He confirmed dispatching City employees to the area in question on several occasions to conduct various tests on the sewer lines. Mr. Palumbo acknowledged the City employees were unable to locate the connection from Mr. Romero's property to the City's sewer lines. He then told Mr. Romero he needed to hire a plumber to find the location of the connection. Mr. Palumbo recommended Rodney Babineaux to Mr. Romero, who hired him shortly thereafter.

According to Mr. Palumbo, Mr. Babineaux located the connection, left markings on the ground to indicate where it was, and contacted the City with that information. It was alleged by Mr. Labiche in his report that the City then installed

4

a backflow preventer, which largely eliminated the problems with flooding. Mr. Palumbo did not confirm this action.

The trial court noted it was Mr. Romero's burden to prove, pursuant to La.R.S. 9:2800, there was a defect in the City's sewerage system which presented an unreasonable risk of harm and that the defect caused the damage. The trial court found the testimony of Mr. Labiche "established the presence of an old, faulty, fragile and defective New Iberia sewer system." The trial court also noted Mr. Romero's testimony of frequent sewer overflow instances was corroborated by other business owners in the area. The trial court also found the City had notice of the particular vice or defect in the sewerage system and failed to remedy said defects. This failure to maintain and repair the sewerage system was the sole cause of the damages Mr. Romero suffered, which the trial court found to amount to $127,611.19. The judgment cast the City liable to Mr. Romero for that amount of damages plus legal interest from the date of judicial demand. The City appealed the trial court's judgment, asserting the following assignments of error:

> (1) The trial court erred in finding Mr. Romero proved the existence of a particular defect in the City's sewer line and/or any causal link between any defect and alleged flooding;
>
> (2) Mr. Romero is solely, or at a minimum, comparatively at fault for the flooding and any ensuing damages that occurred; and
>
> (3) The amount of damages awarded was not proven at trial.

**ANALYSIS**

**I.    *The Trial Court's Findings as to Liability.***

In *Ambrose v. City of New Iberia*, 08-1197, p. 2 (La.App. 3 Cir. 4/1/09), 11 So.3d 34, 36-37, this Court set out the applicable law in situations where a plaintiff alleges a public entity is responsible for a defect which causes damage:

> We recognize that La.R.S. 9:2800 requires actual or constructive notice of the defect as a prerequisite to claims against

5

public entities such as the City for damages caused by the condition of things within its care and custody. La.R.S. 9:2800 provides in pertinent part:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

As such, the plaintiff must prove (1) the defendant owned or had custody of the thing that caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; (3) the defendant had actual or constructive knowledge of the defect or unreasonable risk of harm and failed to take corrective action within a reasonable time; and (4) causation. *Wilson v. City of New Orleans*, 95-2129 (La.App. 4 Cir. 4/3/97), 693 So.2d 344, *writ denied*, 97-1701 (La.10/13/97), 703 So.2d 613. A municipal authority is deemed to have constructive notice if the defect existed for such a period of time that by exercise of ordinary care and diligence, the municipal authority must have known of its existence, and the municipal authority had a reasonable opportunity to guard the public from injury by remedy of the defect. *Dawson v. City of Bogalusa*, 95-0824 (La.App. 1 Cir. 12/15/95), 669 So.2d 451.

An appellate court may not overturn a jury's [or judge's] finding of fact "in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Stobart v. State, Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993). Even if the court of appeal believes that its own findings are more reasonable, the finder of fact's "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Id*. "Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart*, 617 So.2d at 883.

The City argues that the trial court manifestly erred in finding the existence of a particular defect in the City's sewer line and any causal link if there was a defect. The trial court relied on the testimony and report of Mr. Labiche to find there was a

6

defect with the City's sewer line. Mr. Labiche concluded the City's sewer gravity system during periods of heavy rain was unable to handle normal sewage flow, causing sewerage backflow which led to flooding of Mr. Romero's property. This problem he believed was exacerbated by cracks in the City's century old sewer lines as well as broken or separated joints which allowed increased water infiltration into the City's sewer system. The trial court specifically found Mr. Labiche's expert testimony "established the presence of an old, faulty, fragile and defective New Iberia sewer system."

The City attempted to counter Mr. Labiche's testimony with that of Vince Palumbo, the Director of the Waste Water Department for the City of New Iberia. It notes Mr. Palumbo testified Mr. Romero's private sewer lines were made of terra cotta, which was extremely susceptible to cracks and failed joints. However, Mr. Palumbo did acknowledge on cross-examination that the City's pipes were approximately 100 years old, and thus also susceptible to cracks and faulty joints. Mr. Palumbo also testified there were roof drains on the adjacent building, which *might* be connected to Mr. Romero's private sewer line, which *could* create increased water pressure on the private sewer line. The City hypothesized in its brief that "[p]erhaps the simplest explanation is that in the 60 or 70 years since the Romero's 245-foot terracotta pipes were installed, the integrity of those pipes has collapsed, allowing infiltration and causing problems during periods of intense rainfall." Of particular note, when questioned as to Mr. Labiche's conclusions that it was a defect in the City's sewer pipes which led to the flooding of Mr. Romero's property, Mr. Palumbo stated:

> Q:    You heard our expert (Mr. Labiche) testify that he thought that the water coming into Mr. romero's building was from the City, from the street? You heard him say that?
>
> A:    I did hear him say that.

7

Q: And you don't agree with that?

A: I mean, it's his opinion.

Q: But you don't agree with that?

A: I don't disagree with it and - -

Q: And you don't disagree with it.  Thank you.

The trial court also noted that other business owners in the same vicinity corroborated the occurrence of frequent sewer overflow events in the area.  The City argued there was no specific testimony of any other flooding events in the area on March 25, 2009, which was the flooding event which caused the majority of Mr. Romero's damages.  However, the trial court was not unreasonable in concluding that various incidents of flooding in the area, whether on that specific date or not, corroborated Mr. Romero's claim that a defect existed in the City's sewer system.

In reaching its conclusion, the trial court considered the evidence before it on the issue, primarily the testimony and evidence offered by Mr. Labiche and Mr. Palumbo.  Ultimately, the trial court found Mr. Labiche's conclusions the most credible.  Even were we to accept the City's arguments that Mr. Palumbo's testimony supported its position that there was no proof its sewer pipes were the cause of the flooding, it only served to create a conflict with Mr. Labiche's testimony.  Resolution of this conflict in the testimony is the sole province of the finder of fact, and this court may not disturb that conclusion unless we find it to be manifestly erroneous.  After review of the record before us, we cannot say this determination was manifestly erroneous.

The record also established that the trial court did not manifestly err in finding the City had actual or constructive notice of defect and a reasonable

8

opportunity to repair the defect. The evidence was clear the City had been called out on numerous occasions by Mr. Romero and other property owners in the area concerning problems with flooding, toilets unable to flush and foul odor after heavy rains. Mr. Palumbo confirmed the City responded on numerous instances to these complaints, but was unable to locate the source of the problems.

There also is no merit to the City's argument that Mr. Romero failed to prove a causal link between any defect and alleged flooding. The record contains ample evidence tending to show that the City's failure to repair and/or maintain its sewer system in the area caused flooding and extensive damage to Mr. Romero's property.

Lastly, we find no evidence in the record establishing any comparative fault on the part of Mr. Romero. The record shows Mr. Romero repeatedly contacted the City in regards to his flooding problems. Further, when requested by the City to inspect his own sewer lines he hired private plumbers to do so. In fact, Mr. Romero followed the recommendation of Mr. Palumbo and hired Rodney Babineaux to inspect his private sewer lines. The testimony of Mr. Palumbo also indicated the City relied on the work of Mr. Babineaux to finally locate the connection between Mr. Romero's private line and the City's sewer line.

## II.    *Amount of Damages.*

In its final assignment of error, the City contends the trial court abused its discretion in awarding the full amount of damages claimed by Mr. Romero, arguing he failed to establish same.

Mr. Romero presented the testimony and invoices from those workers/companies who performed the repairs on his property. The City called into question the credibility of some of the amounts claimed by Mr. Romero's witnesses. The City also presented the testimony of Randy Vidrine, an adjuster

who performed a repair estimate for the work done on the property. He estimated the repair and remediation of the entire building amounted to $42,071.79.

The trial court heard the conflicting testimony regarding the extent of damage caused to Mr. Romero's property and the alleged costs of repair. The court considered the evidence and weighed the credibility of the witnesses. The trial court undoubtedly found Mr. Romero's witnesses were credible and accepted the amounts charged for the repairs made by them. The law is well settled that the factfinder's choice between two permissible views of the evidence cannot be manifestly erroneous. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citing *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978) and *Watson v. State Farm Fire & Casualty Ins. Co.*, 469 So.2d 967 (La.1985)). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Cole v. State Department of Public Safety & Corrections*, 01-2123 (La. 9/4/02), 825 So.2d 1134. Moreover, the trier of fact is given much discretion in the assessment of damages, and upon appellate review, damage awards will be disturbed only when there has been a clear abuse of that discretion. La.Civ.Code art. 2324.1. Thus, we cannot say the trial court erred in awarding damages based upon the testimony and invoices of Mr. Romero's witnesses.

## DECREE

For the foregoing reasons, the judgment of the lower court is affirmed. All costs of this appeal are assessed to defendant-appellant, the City of New Iberia.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2—16.3.