759 So.2d 240 (2000)
Donna LaBOVE, et vir.
v.
Roy RAFTERY, Jr., et al.
No. 99-1414.
Court of Appeal of Louisiana, Third Circuit.
April 19, 2000.
*245 Byrlyne Van Dyke, Van Dyke-Dowes Law Firm, Lake Charles, LA, R. Bruce Macmurdo, Steffes & Macmurdo LLP, Baton Rouge, LA, Counsel for Plaintiff/Appellee.
Joan Canny & Eliska Plunkett, McGlinchey Stafford, New Orleans, LA, Glenn Alexander & Jerry Jones, Jones & Alexander, Cameron, LA, Counsel for Defendants/Appellants.
(Court composed of Judge JOHN D. SAUNDERS, Judge BILLIE COLOMBARO WOODARD, Judge ELIZABETH A. PICKETT).
SAUNDERS, Judge.
This is a wrongful termination case by constructive discharge due to alleged age discrimination. The jury found in favor of the employee, Donna LaBove, hereinafter "Plaintiff," and against Cameron State Bank, hereinafter "CSB." Damages were awarded to Plaintiff for age discrimination, constructive discharge due to age discrimination, and intentional infliction of emotional distress in the amount of $100,000.00 in general damages, $79,406.00 in loss of past earnings, and $489,340.00 in loss of future earnings, including legal interest and costs. CSB appeals the judgment.
Plaintiff appeals the denial of attorney's fees and further appeals the jury award of general damages as inadequate. For the foregoing reasons, we affirm.

FACTS
Plaintiff began her career at CSB in 1978 and there remained employed for the next sixteen years. Bank regulators audited CSB and in February 1993, the FDIC placed CSB under a "cease and desist" order requiring rapid and extraordinarily sweeping changes in the bank's operation in order to avoid closure of the bank. In August of 1992, Roy Raftery, originally a named defendant who has since been dismissed, was installed as the new President of CSB.
Raftery made significant changes in the personnel, policies and procedures of CSB. At that time, Plaintiff was working in the bank's Cameron office as Assistant Vice-President of Marketing and Public Relations. During the transition, Plaintiffs marketing duties were removed and in January 1993, Raftery promoted Plaintiff Vice-President with a salary increase. Raftery temporarily took on the marketing responsibilities which were later reassigned in 1995 to another employee, Leslie Harless, a woman under 40 of age.
When another bank employee resigned, Plaintiff was required to assume the exemployee's duties regarding purchasing and supply. At about the same time, Raftery required that all employees at the Cameron office location report to the Branch Manager and Assistant Branch Manager to make the lines of authority consistent with the existing practice at all other bank locations. This initiated a change in the chain of command wherein Plaintiff, a Vice-President, now reported to either the Branch Manager or Assistant Branch Manager.
In October 1995, Plaintiff communicated to the Senior Vice-President that she believed her job was too stressful. Plaintiff was reputably offered a less stressful position at another branch which she rejected. Plaintiff remained at the same branch and a new position was created, which made her responsible for new accounts and required her to act as back-up telleran entry level position. Plaintiffs pay was reduced; she was also informed that she would no longer represent the bank at community functions on bank time and was no longer responsible for approving checks or insufficient funds matters. In December *246 1995, Plaintiff suffered a nervous breakdown.
Plaintiff subsequently wrote a memo to Human Resources Director, Paula Poole, stating the new position was too stressful. Plaintiff and management continued to have problems, including: a dispute regarding Plaintiff's alleged failure to report a gift; Plaintiffs breaking down and crying in the lobby to bank customers; Plaintiffs failure to receive a key to the branch when locks were changed; and, Plaintiff's allegations that other staff members were inspecting her garbage. In April 1996, Plaintiff received a written reprimand for errors and for failing to follow bank procedures. Plaintiff received a second written warning in June 1996, and shortly thereafter Plaintiff quit.
Plaintiff brought suit on February 27, 1997, against Roy Raftery, Evelyn Landry, Greg Wicke, CSB, and ABC Insurance Company. Raftery, Landry, and Wicke were dismissed on March 3, 1998. A jury trial was had. At the close of Plaintiff's case and again at the close of all evidence, CSB moved for a directed verdict. These motions were denied. Judgment was rendered against CSB, after which CSB filed a Motion for Judgment Notwithstanding the Verdict and/or Motion for New Trial or Remittitur of Damages; these motions were also denied. CSB and Plaintiff have both raised issues on appeal.
CSB has lodged a motion to strike appellee's answer and brief, citing service deficiencies. We find that if there was indeed any service defects, such defects were harmless; we now consider the arguments on appeal.

LAW AND ANALYSIS

I. CSB's Assignments of Error

CSB attacks the jury verdict on appeal, arguing thirteen assignments of error provide the grounds for reversal. In the interest of efficiency, we have grouped CSB's assignments and assessed them accordingly.

A. Jury Instructions
CSB asserts four instances of legal error made in the jury instructions. Particularly, CSB argues the jury instruction on age discrimination failed to incorporate a "but for" standard of causation, the jury instruction on intentional infliction of emotional distress, hereinafter IIED, was incomplete, and prejudicial error was made where the jury was instructed that it may presume CSB's conduct caused Plaintiff's injuries; CSB also assigns error where the trial judge refused to give a jury instruction indicating Plaintiff's subjective belief that she was mistreated due to her age is insufficient to prove age discrimination. Evans v. Tudor Const., 95-1029 (La.App. 3 Cir. 1/31/96); 670 So.2d 447, 452, provides:
Adequate jury instructions are those which fairly and reasonably point up issues and which provide correct principles of law for the jury to apply to those issues. Hi-Tech Timber [Co.] v. Valley Elec. Member., 94-1033 (La.App. 3 Cir. 2/1/95); 649 So.2d 1203, writ denied, 95-568 (La.4/21/95); 653 So.2d 571. Although the trial judge must give instructions which properly reflect the law applicable in light of the pleadings and facts in each particular case, he is not required to give the instructions exactly as requested. Id. Neither is the judge required to give all the law available on the subject in question. He is only required to instruct the jury as to the law that is pertinent to the case and to do so in terms that the jury can easily comprehend and apply to the evidence before it. Id. The adequacy of the jury instructions must be determined in light of the instructions as a whole. Id. An appellate court must exercise great restraint before overturning a jury verdict because the instructions were so erroneous as to be prejudicial. Id.

1. "But for" Standard:
We first address the jury instruction CSB alleges gave rise to reversible *247 error in failing to set forth a "but for" standard of causation. The jury instruction in question states:
The ultimate burden of proof, however, is on the plaintiffs to convince you that more likely than not, age was one of the factors considered by the defendant and was a `determinative factor,' that is age made a difference, in the defendant's actions.
CSB relies on Barbe v. A.A. Harmon & Co., 94-2423 (La.App. 4 Cir. 1/7/98); 705 So.2d 1210, writ denied, 98-526 (La.5/15/98); 719 So.2d 462, to conclude that the above jury instruction was misleading. In Barbe, the court noted, "[t]he adequacy of jury instructions must be determined in light of the instruction as a whole." Id. at p. 7, 705 So.2d at 1216. After reviewing the jury instructions as a whole, the Barbe court only then concluded:
The only jury interrogatory on the issue of age discrimination in this case asked "Did the defendant, A.A. Harmon & Co., commit unlawful age discrimination against Joseph L. Barbe, Jr.?" The jury's answer to that interrogatory, unfortunately, cannot help us in determining if the jury specifically concluded that Harmon's stated reason for Mr. Barbe's discharge was pretextual, and that he would not have been terminated but for the motive of age discrimination. We find that the jury instruction given on age discrimination in this case was misleading and confusing and did not adequately state the substance of the law, and that the inadequate and misleading jury charge probably was responsible for an incorrect verdict. Accordingly, a de novo review of the record on this issue is required.
Id. at p. 9-10, 705 So.2d at 1217.
In the matter before us, the jury instructions, read together, make it clear that age discrimination need be present in a "but for" sense. As Plaintiff points out in her brief, the other instructions provide the following concepts: "that the discriminatory reason more likely than not motivate the bank;" "it is not discrimination unless the choices were made for discriminatory reasons based on age;" and "the true reason was discrimination." The instructions in the Barbe case contained no such supporting instructions unmistakenly and therein lies the difference between that case and the matter before us. It is clear that the above cited instructions convey the "but for" conceptone even uses the word "for" in the context of "unless... for," with the word "unless" being a clear synonym for the word "but". These instructions do very adequately state the substance of the law. They are not misleading and they are not confusing. Hence, the test of Barbe is easily met. The most that can be said is that the trial judge used the word "unless" instead of the word "but." He should be allowed this latitude.

2. Presumed Causation:
CSB next argues that a jury instruction given allowed the jury to make an improper presumption. The alleged offending instruction reads as follows:
A medical or mental condition is presumed to have resulted from a Defendant's conduct if before the actions are taken, the person was in good health or affected only with latent systems but shortly after the conduct the medical or mental conditions manifested themselves, provided that the medical evidence shows that there is a reasonable probability of a causal connection between the conduct and the subsequent injuries.
CSB argues the trial court erred in admitting the foregoing jury instruction where the supreme court in Housley v. Cerise, 579 So.2d 973 (La.1991), the case upon which Plaintiff relied in submitting the instruction, did not use a "reasonable probability" standard, rather, the Housley court merely affirmed the trial court's finding that causation was proved by a *248 preponderance of the evidence. This assertion is not accurate. Before addressing the defendant's argument and after citing the language[1] making up the jury instruction in the present case, the court in Housley clearly stated, "[w]e find this principle to be applicable in the present case," and the court then continued its analysis in light of the presumption. Id. at 980.
The instruction inserts the requirement of a temporal connection between a defendant's conduct and the manifestation of a plaintiff's condition. The finding of the temporal element is a fact finding which should not be disturbed on appeal absent manifest error. Mart v. Hill, 505 So.2d 1120 (La.1987).
Plaintiff saw several physicians who validated the connection between the stress she was experiencing as a result of her workplace and her breakdown. Where the record supports a temporal connection between the changes in her work environment and her emotional difficulties, we must give due deference to the jury's fact finding.
CSB further contends that the instruction was given in error since it has not before been applied in an employment context. This argument is unpersuasive. The presumption has been readily applied in cases involving actions arising under La.Civ.Code art. 2315 and we see no reason now why it should not now be applied for the tort of IIED. White v. Monsanto, 585 So.2d 1205, 1209 (La.1991), provides that "[o]ne who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." The kind of emotional distress for which a claimant may recover has been described in Lejeune v. Rayne Branch Hosp., 556 So.2d 559, 570 (La.1990), to wit:
The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery. Serious emotional distress, of course, goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating.
A review of the record presents sufficient evidence upon which a jury could reasonably find that Plaintiff suffered damages that were severe and debilitating, particularly the severe depression from which all of the experts agreed Plaintiff suffered.

3. Instruction on Intentional Infliction of Emotional Distress:
CSB also claims that the jury instructions on IIED was prejudicial, arguing that the instruction taken from White, 585 So.2d 1205, was incomplete. The instruction given to the jury was as follows:
The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interest....A plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger.
CSB argues that qualifying language following the above language taken from Monsanto was not included in the instruction, thereby introducing prejudicial error. That omitted language is as follows:
On the other hand, conduct which may otherwise be extreme and outrageous, may be privileged under the circumstances. Liability does not attach where the actor has done no more than to insist upon his legal rights in a permissible *249 way, even though he is aware that such insistence is certain to cause emotional distress.
We are unpersuaded that the omission of such language introduced prejudicial error. Sufficient clarifying language arises in other instructions given to the jury, particularly:
You cannot find Cameron State Bank liable if you determine that only mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities occurred. An employee must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind.
Accordingly, we find no error in the trial judge's omission of CSB's cited language.

4. Denial of Instruction Regarding Plaintiff's Subjective Beliefs:
The Uniform Rules of Louisiana Courts of Appeals, Rule 2-12.4 provides that "[a]ll specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed." While assigning it as error, CSB failed to brief this issue, and we accordingly deem it abandoned.

B. Sufficiency of the Evidence
CSB argues that the evidence presented at trial does not support a verdict finding age discrimination where constructive discharge and Plaintiffs replacement by a person under forty years of age was not shown; CSB argues that the trial judge erred in implementing the jury's verdict to this effect.
To determine whether the evidence supported a finding of age discrimination, we must consider first what factors must be found for an employer's actions to rise to such discrimination; and, secondly, we must consider whether the factfinder's conclusions in that regard are without manifest error. To establish a prima facie case of age discrimination, a claimant must show:
(1) he was in the protected age group between the ages of forty and seventy,
(2) his employment with the defendant was involuntarily terminated,
(3) he was qualified to perform the job that he was employed to perform; and,
(4) he was replaced by a person outside the protected age group comprising individuals between the ages of forty and seventy.
. . . .
This initial prima facie stage is but one of three steps in the evidentiary process designed to "progressively ... sharpen the inquiry into the elusive factual question of intentional discrimination." If the plaintiff-employee succeeds in presenting a prima facie case, a rebuttable presumption of intentional discrimination is established. To do so, he "need only make a very minimal showing ... that he was in the protected class, that he was qualified for the job in question, and that employees outside the protected class were more favorably treated."
Taylor v. Oakborne Country Club, 95-388, p. 7-9 (La.App. 3 Cir. 10/4/95); 663 So.2d 379, 384 (citations omitted.) Factual determinations made by a fact finder are subject to manifest error review, as provided by Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989):
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for *250 the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.

When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
(Citations omitted.)
CSB assails the jury verdict finding age discrimination arguing that Plaintiff failed to establish she was involuntarily terminated, in this case constructively discharged, and that Plaintiff failed to show that she was replaced by a person outside the protected age group. To support a claim of constructive discharge, an employee must establish that working conditions were so difficult or unpleasant that a reasonable person placed in that position would have felt compelled to resign. Bannister v. Dep't of Streets, 95-404 (La.1/16/96); 666 So.2d 641. For the reasons expressed infra in our affirmation of the jury's IIED finding, we find the working conditions leading up to Plaintiff's leaving CSB, readily rise to the level of a constructive discharge of Plaintiff.
CSB's next argues that the verdict finding age discrimination must fail since Plaintiff failed to show that she was replaced by a person outside of the protected age group. We note that the record need only provide sufficient evidence upon which jurors could reasonably differ in determining the factual question of whether others outside of the protected age group, between forty and seventy, were more favorably treated than Plaintiff and that Plaintiff's duties were taken over by someone outside of that protected class. The record indicates employees like Tonya Goss, Mary Mhire and Sonya Lalonde, all under thirty years of age, replaced Plaintiff where each assumed duties Plaintiff once performed. Don Fruge, a long time professional colleague of Raftery's, attested to Raftery's preference for younger, attractive women and his general philosophy that everyone else preferred the same.
Further, we note the elusive nature of an age discriminatory claim which particularly compels this court to defer to the factfinder who was in the best position to make credibility determinations and gauge the manner of the witnesses to reach a finding of constructive discharge arising from age-related discrimination. Accordingly, read as whole, the record amply supports a finding of CSB's intentional discrimination of Plaintiff based on age and we find no manifest error in the jury's conclusion of the same.

C. Exclusion of Document Summaries:
Appellant argues error was made where the trial judge failed to admit *251 into evidence, under La.Code Evid. art. 1006, Appellant's document summaries. La.Code Evid. art. 1006 provides:
The contents of otherwise admissible voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.
The trial judge refused to admit the summaries, finding they were untimely made available to Plaintiff. Counsel for CSB discussed the following in its proffer of the summaries:
So, we would like to proffer at this time two summaries made pursuant to Rule 1006.... One of Employees Separated from Cameron State Bank from 1994 through 1997 by age. That is the summary which was discussed in your office together with the underlying documentation which supports the summary. We have a second rule 1006 summary of Employees of Cameron State Bank from 1993 to 1997 50 Years of Age and Older. This summary we had not yet provided the underlying documentation to the plaintiff's counsel for review as required under 1006, but we believe that Rule 1006 does not set any time limits. It simply states that at a time convenient, those documents should be made available for the review or copying of the opposing counsel.
In explaining his denial of the evidence, the trial judge noted that "the underlying documentation was not made to opposing counsel timely and/or it was not in full compliance with what the pretrial order regarding discovery had been." Plaintiff further mentioned that the underlying documentation was not complete in the proffer. "Whether evidence is admissible or not is left to the wide discretion of the trial judge, and his ruling will not be disturbed absent the finding of a clear abuse of that discretion." Evans, 670 So.2d at 452. It is apparent that CSB had ample notice to get the documents in toto to Plaintiffs; nevertheless, CSB waited until it absolutely had to deliver the underlying documents before doing so, and then, the documents were not complete. There is simply nothing in the record that supports CSB's allegation that the trial court abused its discretion in refusing to admit the summaries.

D. Proof of Intentional Infliction of Emotional Distress:
CSB argues that the evidence failed to establish the requisite elements of an IIED claim in an employment context and that the trial judge erred in implementing the jury verdict finding the same, in denial of CSB's motion for a JNOV. White, 585 So.2d at 1209, provides the requisite elements for a successful IIED claim:
[F]or intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.
These three elements require fact findings, and as such are subject to manifest error review, which in the matter sub judice, necessarily hinged on the jurors evaluations of credibility and inferences of fact. Rosell, 549 So.2d 840.
We first consider whether the record, viewed in its entirety, reasonably supports a finding that CSB's conduct toward Plaintiff was extreme and outrageous. The Monsanto court provided a thorough description of what kind of actions meet the "extreme and outrageous" requirement, to wit:

*252 The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."
The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Thus, many of the cases have involved circumstances arising in the workplace. A plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger.
On the other hand, conduct which may otherwise be extreme and outrageous, may be privileged under the circumstances. Liability does not attach where the actor has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional stress. Thus, disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time.
The distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme.
The defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered. But the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. It follows that unless the actor has knowledge of the other's particular susceptibility to emotional distress, the actor's conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities.
Id. at 1209-10 (citations omitted).
Whether actions taken by CSB, by Roy Raftery, and/or by other senior officers of the bank rise to the level of extreme or outrageous is a question of fact. A reading of the record betrays ample testimony upon which a jury could find that the actions by CSB's employees toward Plaintiff were extreme and outrageous. Testimony was elicited that described aggressively egregious actions taken by Evelyn Landry, not a senior ranking employee to Plaintiff, but the person to whom Plaintiff nevertheless was told to answer to, and by Roy Raftery. Supporting Plaintiff's description of how she had her responsibilities at the bank changed until she was ultimately performing some of the menial tasks that beginning employees would perform, Sandra Deshields and Tina Savoie testified that Plaintiff was routinely and systematically verbally degraded and professionally belittled by Raftery and especially by Landry, Deshields and Savoie, as her co-workers, were even discouraged from associating with Plaintiff and were told not to help or assist her. Belinda Miltenburger testified that she was embarrassed for Plaintiff for the way she was treated. While indeed the testimony concerning the allegations of extreme negative *253 conduct against Plaintiff is denied by Raftery and Landry, where there are two permissible views of the evidence, we can find no manifest error in the jury's determination.
Next, we consider whether Plaintiffs emotional distress was severe. The record readily supports this finding. Sandra Deshields described one incident where she passed by the teller's window where Plaintiff was working and found her "just shaking" and non-responsive. Deshields then took Plaintiff to a hospital where Deshields explained that the physician strongly advised permanently removing Plaintiff from her work environment in order to salvage Plaintiff's health. The record indicates Plaintiff had no health problems prior to the stressful events that arose at CSB and, all of the expert testimony is consistent in one aspect, and that is, in the months leading up to Plaintiffs leaving CSB, Plaintiff was suffering from severe depression.
Finally, for a successful IIED claim, the record must prove a reasonable basis upon which a jury might conclude CSB desired to inflict severe emotional distress or was at least substantially certain that such would follow from its conduct. Taking away the functions Plaintiff had performed for the bank during her many years of service, including marketing and essentially public relations, replacing her old functions with demeaning tasks for a high ranking official, which Plaintiffs Vice-President title would suggest she was, requiring her to answer to younger, less experienced and lower-ranking bank officials, discouraging her co-workers from giving her support, subjecting her to humiliating verbal reprimands, all lead up to one thing and that is, purposeful acts designed to remove Plaintiff from the bank. Where the record provides sufficient evidence upon which jurors could find CSB's acts were designed for the purposeful removal of Plaintiff, we find no manifest error.

E. Challenges for Cause and Admittance of Testimony:
CSB asserts legal error where the trial judge denied CSB's challenges to three jurors for cause under La.Code Civ.P. art. 1765 and where the trial judge permitted irrelevant and prejudicial testimony, including "mere speculation, rank opinion, or outright smear."
La.Code Civ.P. art. 1766(A) provides that "[a]fter a juror has been examined as provided in Article 1763, the court may excuse the juror and if the court does not do so, either party may challenge the juror for cause." La.Code Civ.P. art. 1767 provides:
Although the entire jury may have been accepted and sworn, up to the beginning of the taking of evidence, a juror may be challenged for cause by either side or be excused by the court for cause or by consent of both sides, and the panel completed in the ordinary course.
Plaintiff argues that attorneys for CSB did not, during voir dire nor at any time before the taking of evidence, raise a challenge for cause against the jurors Michael Bartie, Annie Schwark and Diane Armentor. The transcript of the record reveals this assertion of Plaintiffs is correct. Accordingly, where CSB made no timely objection or challenge for cause below, such cannot be raised for the first time on appeal. Further, after a review of the record, we find no abuse of discretion in the trial judge's failure to remove the above mentioned jurors for cause on his own motion.
CSB argues that the jury verdict is tainted by the trial judge's erroneous inclusion of testimony from a "parade of witnesses who testified to incompetent, irrelevant, and unfairly prejudicial matters which poisoned the minds of the jurors and prevented a fair trial." Particularly, CSB argues that the testimony by Plaintiff regarding statements made to her by the bank president, Roy Raftery; testimony by Jennifer Bercier regarding her impressions *254 of the bank, of changes in the bank, and of how it was being run; testimony by Donald Fruge regarding Roy Raftery's character; testimony by Sandra DeShields, a former bank employee, regarding her experiences when she worked at the bank; and testimony given by Belinda Miltenberger, Tina Savoie, and Sherrie Broussard, all former bank employees who testified about their experiences as employees at the bank, were irrelevant to Plaintiffs claims of IIED and age discrimination, and therefore prejudicial. We disagree and find no abuse of the trial judge's discretion where admitted evidence and testimony directly relates to Plaintiffs burden of establishing constructive discharge, a necessary element of proof in Plaintiffs age discrimination claim, and to her claim of IIED. All of the aforementioned witnesses, who either worked for or were patrons of CSB, were at some point or another in strategic positions to observe Plaintiff before and after Raftery's arrival, and were able to attest to the actions of both Plaintiff and the events that evolved concerning this case.
Since the testimony of these witnesses directly applied to the claims set forth by Plaintiff and the relevancy of their testimony is clear, we find no error in the trial judge's decision to allow their testimony.

F. Damages:
Appellant asserts jury error was made when it awarded Plaintiff $489,340.00 in front pay. Appellant also argues that Plaintiffs expert economist's opinions lacked a factual basis, and therefore, the trial judge erred in allowing his testimony. CSB argues that since Dr. Pettingill's analysis assumed Plaintiff incapable of employment, Dr. Pettingill's analysis was should not have been allowed to reach the jury.
The factual basis for an expert opinion determines the credibility of the testimony. It is the responsibility of opposing counsel to explore the factual basis for the opinion and thus, determine its reliability. An unsupported opinion can offer no assistance to the fact finder, and should not be admitted as expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-97, 113 S.Ct. 2786, 2795-98, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116, 1121-23 (La.1993). The trial judge serves a "gatekeeping" function to screen and exclude "invalid" or irrelevant material. Daubert, 509 U.S. at 595-99, 113 S.Ct. at 2798-99; Foret, 628 So.2d at 1122-23.
An appellate court can reverse a lower court's factual findings when the record (1) reflects that a reasonable factual basis does not exist for the finding and (2) establishes that the finding is clearly or manifestly wrong. Stobart v. State, [Through] Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If a court of appeal finds that the trial court made reversible error of law or manifest error of fact, the court of appeal must determine the facts de novo from the record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989).
Miramon v. Bradley, 96-1872, p. 6-7 (La. App. 1 Cir. 9/23/97); 701 So.2d 475, 478-79 (footnote omitted).
We agree with Plaintiff that CSB confuses the role of an expert with that of a factfinder. It was the role of the jury to determine from the evidence whether Plaintiff is capable or will be capable at some point in time of working; this is a factual issue. The role of an economist is merely to provide the economic outcome if such a finding is made. Hence, we defer to the trial judge's decision allowing Dr. Pettingill's expert opinion.
Next, we address CSB's challenge to the jury's award of front pay.
[T]he initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of *255 fact's "Much discretion" in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive or insufficient.
Reck v. Stevens, 373 So.2d 498, 501 (La. 1979) (citations omitted).
CSB argues jury error where Plaintiff was awarded $489,340.00 in front pay, despite her failure to mitigate damages by seeking therapy or attempting to obtain employment. To disturb a jury award, an appellate court must find that a jury abused its "much discretion" in making its determination. Placide v. Jay, 378 So.2d 473 (La.App. 3 Cir.1979). We find no such abuse.
Several factors must be considered in determining the appropriateness of the jury award, including the degree of disability suffered by Plaintiff, the employment opportunities and limitations in her geographic location and Plaintiff's experience. Sufficient testimony was elicited at trial indicating Plaintiff suffered a severe clinical depression when she left her employment with CSB and she still suffered from depression at the time of trial. CSB argues Plaintiff's failure to obtain psychiatric treatment after her separation from CSB equates to a failure to mitigate damages. Pelloquin v. Missouri Pacific R. Co., 216 So.2d 686, 688 (La.App. 3 Cir. 1968), provides:
While an injured person must use reasonable diligence and ordinary care under the circumstances to minimize his damages, nevertheless the courts do not ordinarily apply this principle to restrict an injured person's recovery when expenditures of his own funds are needed to avoid the consequences of the tort; they do so only when `(1) (these expenditures) are small in comparison to the possible losses and (2) it is virtually certain that the risks incurred will avoid at least a part of the loss.'
CSB's argument is unpersuasive in that it assumes Plaintiff could predict and rely on a positive outcome at trial and thereby feel secure that medical expenses would be covered by CSB. Allen Simmons, a vocational rehabilitation counselor, gave a general opinion that Plaintiff theoretically should not have a problem finding work in Cameron and that in Lake Charles, there may be even more opportunities for her. Simmons, however, pointed to no specific jobs that might be available to Plaintiff. Dr. Rathmell testified that Plaintiff was just getting comfortable getting out of her home and that a job requiring her to commute would not be comfortable for Plaintiff. Dr. Post testified that Plaintiff had the type of personality that particularly identified herself with her work and that losing her job as she did with CSB would be a very difficult thing for someone like Plaintiff to handle. It is clear that Cameron is a small, intimate community that embraced the efforts of Plaintiff in her position with CSB. Plaintiff worked her way from the bottom to a position of Vice-President of the bank over the years. In such a community, it is most improbable that Plaintiff could be made whole with a position similarly reflecting her status, influence and potential for further growth as she had with CSB. Plaintiff had a long, very positive working history with CSB prior to the events giving rise to this suit, as attested to by her former employers and her co-workers, and left only after having been demoted and humiliated. After the experience with Raftery at CSB, Plaintiff explained that she felt it would be difficult to trust a new working environment. Certainly, the many years she spent in developing her position and contacts with the community cannot be duplicated by her moving to Lake Charles.
CSB asserts Plaintiff was erroneously awarded $489,340.00 in loss of future earnings, arguing that she is presently able to work and that she failed to mitigate damages. We do not disagree that Plaintiff must act to mitigate her damages as much as is reasonably possible; however, where *256 we see sufficient evidence in the record upon which a jury might find Plaintiff did not fail to mitigate her damages, that she has been incapacitated by her emotional difficulties, including her fear and distrust of future employers, that she is professionally limited by local economics, and that her many years invested in CSB, which led to her position and salary as Vice-President, were lost as a result the action of Raftery and his staff, we must affirm the jury determination.

II. Appellee's Assignments of Error

A. Attorney's Fees:
Plaintiff seeks attorney's fees on appeal where Plaintiff did not file a motion to have attorney's fees assessed under La. R.S. 51:2264 until after the verdict was returned. The trial judge denied Plaintiff's motion, finding that such was an issue that should have been determined by the jury. Plaintiff argues that pursuant to La.Code Civ.P. art. 1812, the court should have determined attorney's fees regardless of whether it was an issue triable by the jury, since La.R.S. 51:2264 provides for reasonable attorney's fees. La.Code Civ.P. art. 1812 provides, in pertinent part:
If the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue omitted unless, before the jury retires, he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding, or if it fails to do so, it shall be presumed to have made a finding in accord with the judgment on the special verdict.
This Article is permissive and allows a trial judge to rule upon an omitted issue if he so desires. The issues brought up by this case revolve around a multitude of very sensitive issues that the jury had to determine. Plaintiff argues that the trial judge is better suited than a jury to rule on the issue of attorney's fees. While we agree that indeed a judge is most often best suited to determine if and how much attorney's fees should be awarded, under the unique circumstances of this case and given Plaintiffs belated motion for attorney's fees, we find no manifest error in the trial judge's decision to exercise his discretionary power to deny Plaintiffs motion.
Hence, we affirm the trial judge's rule to deny Plaintiffs motion to assess attorney's fees.

B. General Damages:
Plaintiff asserts that the award of general damages of $100,000.00 was insufficient. "Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the case before it." Richard v. State Dep't of Health & Human Resources, 526 So.2d 1237, 1238 (La.App. 3 Cir.1988), (citing Reck v. Stevens, 373 So.2d 498 (La.1979)). The facts and circumstances of this case as revealed by the record and discussed throughout this opinion simply do not belie an abuse of the jury's discretion in its award of general damages. Accordingly, we affirm the jury's award of $100,000.00.

DECREE
In light of the foregoing discussion, we find no manifest error or abuse of discretion in the trial judge's conclusions nor in the jury's verdict; we therefore affirm the jury's verdict in toto, including Plaintiffs award of $489,340.00 in front pay, $100,000.00 in general damages, and $79,406.00 in loss of past earnings. All costs of appeal are to be shared equally by the parties.
AFFIRMED.
PICKETT, J., dissents.
NOTES
[1] The language and presumption found in the above quoted jury instruction and cited in Housley is taken from Lucas v. Insurance Co. of North Am., 342 So.2d 591 (La.1977).